UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

————————————————————————————————

NELSON LIN,

                    Plaintiff,            25-cv-1367 (JGK)

        - against -                       MEMORANDUM OPINION
                                          AND ORDER
THE HONORABLE JONATHAN H. SHIM, ET
AL.,

                    Defendants.

————————————————————————————————

JOHN G. KOELTL, District Judge:

    The pro se plaintiff, Nelson Lin — who is a lawyer — alleges that several individuals and entities conspired to deprive him of custody of his daughter. Lin brings federal and state-law claims against the New York Family Court judge who presided over Lin's custody dispute, Jonathan H. Shim; Lin's ex-wife, June Hou; Lin's ex-wife's former partner, Marx Rivera; the forensic psychiatrist appointed by the Family Court, Rodrigo Pizarro; Hou's former lawyers, Stephanie Lehman and Fara Rodriguez, as well as their current and former law firms, Offit Kurman, P.A., and Phillips Nizer LLP; Lin's daughter's psychologist, Margaret Areizaga, as well as Dr. Areizaga's employer, Manhattan Psychology Group, P.C.; Lin's daughter's lawyer, Nicole Riordan; and the New York City Administration for Children's Services ("ACS"), along with two agency caseworkers, LaFleur Thomas and Sadina Henderson.

Each defendant moves to dismiss the complaint for lack of subject-matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) and for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). For the following reasons, the motions to dismiss are **granted**.

## I.

Unless otherwise noted, the following facts are taken from the Second Amended Complaint and are accepted as true for purposes of the current motions.

## A.

Lin and Hou have a child together. Second Am. Compl. ("SAC") ¶ 34, ECF No. 60. In 2017, Lin and Hou divorced, and each received joint legal and physical custody of their daughter. Id. In the fall of 2019, Lin, allegedly concerned for his daughter's safety, reported to ACS that Hou's then-partner, Marx Rivera, was abusing the child. See id. ¶¶ 34-35. ACS investigated Lin's allegations against Rivera between October and November of 2019 but ultimately concluded that Lin's allegations were "unsubstantiated." Id. ¶ 42.

In late 2019, Hou initiated custody proceedings in New York Family Court, seeking to limit Lin's custody of the child (the "Family Court Proceedings"). Id. ¶ 36. In December 2019, the judge presiding over the Family Court Proceedings, Judge Shim, appointed Nicole Riordan as the "Attorney for the Child." Id.

2

To manage the effect of the custody dispute on their daughter, Lin and Hou hired Margaret Areizaga to provide therapy. Id. ¶ 38. In April 2020, Dr. Areizaga determined that Lin was "emotionally harming" his daughter.[1] Id. ¶ 44. Lin consequently terminated Dr. Areizaga on June 23, 2020. Id. That same day, Dr. Areizaga reported Lin to ACS, which opened an investigation into Lin. Id.

Sadina Henderson was the ACS caseworker who investigated Dr. Areizaga's allegations against Lin. Id. ¶ 45. After interviewing Hou, Lin, and their daughter, Henderson concluded that there was "some credible evidence" that Lin was emotionally abusing his daughter. Id. On August 25, 2020, ACS issued an "indicated" finding against Lin. Id. According to Lin, he was not afforded a hearing and his request for administrative review remains pending. Id.

In June 2020, Judge Shim also appointed Rodrigo Pizarro, an independent forensic evaluator, to assess Lin, Hou, and their daughter, and to make ultimate custody recommendations. Id. ¶ 38. Pizarro began his investigation in the fall of 2020. See id. ¶¶ 38, 46. In January 2021, Pizarro issued a report recommending that Hou receive full custody of her daughter. Id. ¶ 46.

---

[1] Unless otherwise noted, this Memorandum Opinion and Order omits all internal alterations, citations, footnotes, and quotation marks in quoted text.

According to Lin, Pizarro conducted a biased investigation, relied on inaccurate information from Hou and Dr. Areizaga, and ignored "substantial evidence of Hou's wrongdoing." Id.

Lin claims that in November 2022, his daughter renewed her allegations that Rivera was abusing her, and Lin sought emergency relief to protect his daughter. Id. ¶ 48. Lin reported Rivera to Lin's attorney, the New York Police Department, and ACS. Id. ACS assigned a new case worker, LaFleur Thomas, to investigate. Id. Thomas concluded her investigation in January 2023 and determined not only that Lin's allegations against Rivera were unsubstantiated, but that Lin had abused his daughter. Id. ¶ 50.

On December 6, 2022, the parties appeared before Judge Shim for a fact-finding hearing in the underlying custody dispute. Id. ¶ 51. According to Lin, at the conclusion of that proceeding, Judge Shim indefinitely suspended Lin's parenting time "without holding any evidentiary hearing,[] taking witness testimony," or giving Lin an opportunity to present his own evidence. Id. Lin appealed Judge Shim's order to the New York State Supreme Court, Appellate Division, First Department, which affirmed Judge Shim's order. Id. Ex. C at 5 n.4; see also id. ¶ 79.

Judge Shim proceeded to issue four additional allegedly unlawful orders. First, on December 17, 2024, Judge Shim denied Lin's "motion to fairly apportion" Riordan's fees. Id. ¶ 82.

4

Second, also on December 17, 2024, Judge Shim denied Lin's motion to discharge Riordan. Id. Third, on December 18, 2024, Judge Shim denied Lin's motion to terminate the order awarding Hou control over the child's therapy. See id ¶¶ 82, 98. And fourth, on January 16, 2025, Judge Shim denied Lin's motion seeking various forms of relief, including that Judge Shim recuse himself. See id. ¶ 54. Hou cross-moved for, among other things, "a moratorium on motions submitted by [Lin] without th[e] [Family] Court's prior consent in an attempt to curtail [Lin's] bad faith litigation tactics." Id. Ex. C. at 2. Judge Shim granted that part of Hou's cross-motion and prohibited Lin from filing additional motions without first seeking leave from the Family Court. Id. Ex. C. at 9.

According to Lin, on February 28, 2025, during a Family Court hearing, "Riordan and Shim (with tacit support from Hou's attorneys) threatened" Lin "with contempt, incarceration, and damage to [his] law license, unless he immediately paid Riordan $12,500.00 in alleged outstanding fees." Id. ¶ 5; see also id. ¶ 55.

**B.**

Lin brought this action on February 17, 2025. ECF No. 1; see also ECF No. 11. In his initial complaint, Lin asserted claims under 42 U.S.C. § 1983, 42 U.S.C. § 1985, and New York state law against Judge Shim, Hou, Rivera, Pizarro, Riordan,

Dr. Areizaga, Manhattan Psychology Group, and various John and Jane Doe defendants. ECF No. 11. Lin then filed a proposed order to show cause for a preliminary injunction and temporary restraining order. ECF No. 23. Chief Judge Swain denied Lin's application, holding that his claims were unlikely to succeed on the merits for various jurisdictional and prudential reasons.

Lin amended his complaint on March 13, 2025, ECF No. 28, and then again on April 9, 2025, ECF No. 60. The current Second Amended Complaint names Judge Shim, Hou, Rivera, Pizarro, Riordan, Dr. Areizaga, Manhattan Psychology Group, ACS, Henderson, Thomas, Hou's lawyers (Lehman and Rodriguez), their past and present law firms (Offit Kurman, P.A. and Phillips Nizer LLP), and various John and Jane Doe defendants. Each defendant moves to dismiss the complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). See ECF Nos. 93, 96, 101, 107, 127, 136, 149, 163. At the present time, the Family Court Proceedings remain pending.

## II.

When presented with a motion to dismiss under both Federal Rule of Civil Procedure 12(b)(1) for lack of subject-matter jurisdiction and Rule 12(b)(6) for failure to state a claim upon which relief can be granted, the Court must first analyze the motion under Rule 12(b)(1) to determine whether the Court has the subject-matter jurisdiction necessary to consider the merits

6

of the action. See Rhulen Agency, Inc. v. Alabama Ins. Guar. Ass'n, 896 F.2d 674, 678 (2d Cir. 1990); see also S.E.C. v. Rorech, 673 F. Supp. 2d 217, 220-21 (S.D.N.Y. 2009).

In defending against a motion to dismiss for lack of subject-matter jurisdiction, the plaintiff bears the burden of proving the Court's jurisdiction by a preponderance of the evidence. See Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000). In considering such a motion, the Court generally must accept the material factual allegations in the complaint as true. See J.S. ex rel. N.S. v. Attica Cent. Sch., 386 F.3d 107, 110 (2d Cir. 2004). The Court does not, however, draw all reasonable inferences in the plaintiff's favor. See id.; see also Graubart v. Jazz Images, Inc., No. 02-cv-4645, 2006 WL 1140724, at *2 (S.D.N.Y. Apr. 27, 2006). Indeed, when jurisdictional facts are disputed, the Court has the power and the obligation to consider matters outside the pleadings, such as affidavits, documents, and testimony, to determine whether jurisdiction exists. See APWU v. Potter, 343 F.3d 619, 627 (2d Cir. 2003); Kamen v. Am. Tel. & Tel. Co., 791 F.2d 1006, 1011 (2d Cir. 1986). In so doing, the Court is guided by that body of decisional law that has developed under Federal Rule of Civil Procedure 56. See Kamen, 791 F.2d at 1011.

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must allege "enough facts to state a claim to relief

that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). This Court accepts the allegations in the complaint as true and draws all reasonable inferences in the plaintiff's favor. McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 191 (2d Cir. 2007). Although the Court must construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Iqbal, 556 U.S. at 678. For purposes of a Rule 12(b)(6) motion, "the complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." Chambers v. Time Warner, Inc., 282 F.3d 147, 152 (2d Cir. 2002).

Finally, the Court ordinarily must construe pro se pleadings liberally. See Harris v. Mills, 572 F.3d 66, 72 (2d Cir. 2009). However, "the degree of solicitude may be lessened where the particular pro se litigant is experienced in litigation and familiar with the procedural setting presented." Tracy v. Freshwater, 623 F.3d 90, 101 (2d Cir. 2010). Thus, "a lawyer

8

representing himself ordinarily receives no such solicitude at all." Id. at 102.

### III.

Lin brings eighteen causes of actions under federal and state law. The Court first addresses certain abstention and jurisdictional bars followed by the specific defects in his federal claims and the lack of supplemental jurisdiction.

### A.

The defendants move to dismiss each of Lin's federal-law claims based on several abstention doctrines and jurisdictional bars — specifically, Younger abstention, the Rooker-Feldman doctrine, and domestic-affairs abstention. Judge Shim also argues that he is entitled to state sovereign immunity for actions he took in his official capacity as a Family Court Judge.

### 1.

Under the abstention doctrine established in Younger v. Harris, 401 U.S. 37 (1971), "a federal court may not enjoin a pending state criminal proceeding in the absence of special circumstances suggesting bad faith, harassment or irreparable injury that is both serious and immediate." Gibson v. Berryhill, 411 U.S. 564, 573-74 (1973). The Supreme Court has since explained that "[t]he policies underlying Younger are fully applicable to noncriminal judicial proceedings when important state interests are involved." Middlesex Cnty. Ethics Comm. v. Garden

State Bar Ass'n, 457 U.S. 423, 432 (1982). Thus, when a federal litigant invokes the jurisdiction of the federal courts to interfere with a state proceeding implicating important state interests, the federal court should abstain "unless state law clearly bars the interposition of the constitutional [or federal] claims," and "so long as there is no showing of bad faith, harassment, or some other extraordinary circumstance that would make abstention inappropriate." Id. at 432, 435.

Younger abstention bars Lin's claims for injunctive and declaratory relief because his "federal lawsuit implicates the way that New York courts manage their own ... custody proceedings — a subject in which the states have an especially strong interest." Falco v. Justices of the Matrimonial Parts of Supreme Ct. of Suffolk Cnty., 805 F.3d 425, 427 (2d Cir. 2015). Lin's claims under § 1983, for example, are replete with requests for relief modifying the Family Court's orders. Lin seeks, among other things, declaratory and injunctive relief ordering the Family Court to "restor[e] [Lin's] custody rights pending lawful adjudication," SAC ¶ 84, to "vacat[e] the fraudulent supervised visitation order," id. ¶ 91, and to "prohibit[] enforcement of th[e] [gag] order and prevent[] future pre-filing bans or contempt threats," id. ¶ 98. These requests for relief plainly implicate New York's interest in managing its own custody proceedings.

To avoid Younger abstention, Lin invokes two "tightly de-fined" exceptions: bad faith and extraordinary circumstances. Diamond "D" Constr. Corp. v. McGowan, 282 F.3d 191, 197–98 (2d Cir. 2002). The bad-faith exception depends on the "subjective motivation of the state authority in bringing the proceeding." Id. at 199. Thus, "[t]o invoke this exception, the federal plaintiff must show that the state proceeding was initiated with and is animated by retaliatory, harassing, or other illegitimate motives." Id. The extraordinary-circumstances exception, on the other hand, applies only when circumstances "render the state court incapable of fairly and fully adjudicating the federal is-sues before it ... creating an extraordinarily pressing need for immediate federal equitable relief." Id. at 201. Allegations of bias fall within the extraordinary-circumstances exception. Id.

Lin's allegations of bad faith and bias are inadequate to invoke either exception because they are wholly conclusory. The cases Lin cites to the contrary are unpersuasive. For example, Lin relies on Cullen v. Fliegner, but the Court of Appeals for the Second Circuit in that case determined that the bad-faith exception applied based on the appellant's "past history of per-sonal conflict" with the appellee. 18 F.3d 96, 104 (2d Cir. 1994). In this case, by contrast, Lin alleges no past interac-tions with Judge Shim, let alone a history of conflict. Simi-larly, in Gibson v. Berryhill, the Supreme Court found bias

triggering the extraordinary-circumstances exception when the state administrative agency had a pecuniary interest in the outcome of the state-court proceedings. 411 U.S. at 579. But again, Lin does not allege that to be the case here.

To the extent Lin seeks injunctive or declaratory relief that would interfere with the ongoing Family Court Proceedings, those claims are **dismissed.**

**2.**

When "a federal court is asked to grant a divorce or annulment, determine support payments, or award custody of a child," the Supreme Court has held that such disputes, even though they otherwise might satisfy the requirements for diversity jurisdiction, fall within "an implied exception to Congress's grant of diversity jurisdiction in 28 U.S.C. § 1332." Deem v. DiMella-Deem, 941 F.3d 618, 622 (2d Cir. 2019). "Nevertheless, even if subject matter jurisdiction lies over a particular matrimonial dispute" — for example, because the action arises under Congress's grant of federal-question jurisdiction — "federal courts may properly abstain from adjudicating such actions in view of the greater interest and expertise of state courts in this field." American Airlines, Inc. v. Block, 905 F.2d 12, 14 (2d Cir. 1990). "A federal court presented with matrimonial issues or issues 'on the verge' of being matrimonial in nature should" therefore "abstain from exercising jurisdiction so long as there

12

is no obstacle to their full and fair determination in state courts." Id. This so-called domestic-relations abstention is appropriate even when a litigant "seeks only damages and does not challenge the validity of the state court's orders in his ... custody proceedings." Zappin v. Comfort, No. 23-cv-7363, 2024 WL 5001624, at *2 (2d Cir. Dec. 6, 2024).

Even though Lin invokes federal-question jurisdiction, the defendants argue that the Court should nonetheless abstain from exercising jurisdiction because Lin's claims implicate an ongoing child-custody dispute and because there are no obstacles to a full and fair determination of that dispute in state court.

Lin's federal claims alleging, among other things, that the defendants conspired to deprive him of custody of his child are, at a minimum, "on the verge of being[] about child custody." Deem, 941 F.3d at 620. Indeed, Deem itself, which affirmed a district court's decision to invoke domestic-relations abstention, involved "claims under 42 U.S.C. §§ 1983, 1985, and New York state law[] alleging ... that Defendants conspired to maliciously prosecute [the plaintiff] and to violate his right to intimate association with his children." Id.

Lin argues in response that "[f]ederal courts routinely hear constitutional tort claims arising out of custody contexts." Pl.'s Mem. Opp'n Mot. Dismiss ("Opp'n Mem.") 22, ECF No. 131. In support of this proposition, Lin cites Hernandez v.

13

Spitzer, No. 09-cv-3914, 2010 WL 11586928, at *3 (S.D.N.Y. Mar. 29, 2010). But that case does not exist. On the contrary, "[d]istrict courts regularly abstain on this basis in cases that relate to custody disputes, even when the federal case is broader than the state court custody proceedings." Robinson v. Admin. Child. Servs., No. 23-cv-2058, 2025 WL 917198, at *4 (E.D.N.Y. Mar. 25, 2025); see also Hamilton v. Hamilton-Grinols, 363 F. App'x 767, 768-69 (2d Cir. 2010) (abstaining where federal employee requested that his name be removed from a loan held with his ex-wife so he could maintain federal employment); Reeves v. Reeves, No. 22-cv-2544, 2022 WL 1125267, at *1 (S.D.N.Y. Apr. 14, 2022) (declining to exercise jurisdiction over child-custody proceeding).

Because all of Lin's federal claims are, at a minimum, "on the verge of being[] about child custody," Deem, 941 F.3d at 620, the Court abstains from reaching the merits of any of those claims.

### 3.

"Under the Rooker-Feldman doctrine, federal district courts lack jurisdiction over cases that essentially amount to appeals of state court judgments." Vossbrinck v. Accredited Home Lenders, Inc., 773 F.3d 423, 426 (2d Cir. 2014). The doctrine applies if "(1) the federal-court plaintiff lost in state court; (2) the plaintiff complains of injuries caused by a state court

14

judgment; (3) the plaintiff invites review and rejection of that judgment; and (4) the state judgment was rendered before the district court proceedings commenced." Id. This doctrine is exceedingly narrow. Only when a losing state court litigant calls on a district court to modify or "overturn an injurious state-court judgment" should a claim be dismissed under Rooker-Feldman. Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 292-93 (2005). Courts in the Second Circuit, however, routinely hold that this doctrine bars them from reviewing a state court's custody determination. See, e.g., Black v. Ranley, No. 17-cv-9026, 2018 WL 2766138, at *12 (S.D.N.Y. June 8, 2018); J.R. ex rel. Blanchard v. City of New York, No. 11-cv-841, 2012 WL 5932816, at *4-8 (E.D.N.Y. Nov. 27, 2012).

The Rooker-Feldman doctrine bars Lin's claims to the extent he requests injunctive relief vacating or modifying the Family Court's orders. The proper course would be for Lin to appeal those orders to the First Department (as he has done) and the New York Court of Appeals thereafter, and then, potentially, to petition the Supreme Court of the United States for a writ of certiorari. That is because the only federal court with which Congress has vested appellate jurisdiction over state-court orders is the Supreme Court of the United States. See 28 U.S.C. § 1257.

Lin argues that Rooker-Feldman does not apply because "[t]here is no final judgment in the custody proceeding," and in any event, he does not challenge "the outcome of any state court decision, but the conduct of state actors." Opp'n Mem. 20. But both arguments are unpersuasive. First, "Rooker-Feldman applies where the state proceeding has ended with respect to the issues that the federal plaintiff seeks to have reviewed in a federal court, even if other matters remain to be litigated." Melintzky v. HSBC Bank USA, No. 06-cv-13526, 2007 WL 1159639, at *8 n.6 (S.D.N.Y. Apr. 18, 2007). And second, Lin expressly seeks injunctive relief ordering Judge Shim to vacate or modify his orders. It is no answer to the defendants' Rooker-Feldman argument to say that Lin is challenging Judge Shim's conduct in reaching his decisions rather than the decisions themselves. "[S]uch reasoning is sheer sophistry because if the Court were to declare that" Judge Shim's conduct in reaching his decision violated Lin's constitutional rights, "it would effectively be reversing a judgment of the state court." Id. at *8 n.5.

Lin's federal claims are therefore dismissed to the extent they seek to enjoin, modify, or vacate any of Judge Shim's orders.

**4.**

"[A]s a general rule, state governments may not be sued in federal court unless they have waived their Eleventh Amendment

16

immunity, or unless Congress has abrogated the states' Eleventh Amendment immunity when acting pursuant to its authority under Section 5 of the Fourteenth Amendment." Gollomp v. Spitzer, 568 F.3d 355, 366 (2d Cir. 2009). State sovereign immunity "extends beyond the states themselves to state agents and state instrumentalities that are, effectively, arms of a state." Id. This includes the New York State Unified Court System. Id.; see also Martinez v. Queens Cnty. Dist. Att'y, No. 12-CV-6262, 2014 WL 1011054, at *8 n.8 (E.D.N.Y. Mar. 17, 2014) ("[P]laintiff's claims against the state courts and the individual judges, to the extent that plaintiff is suing the judges in their official capacities, are barred under the Eleventh Amendment."), aff'd, 596 F. App'x 10 (2d Cir. 2015) (summary order). Judge Shim is a state-court judge and thus ordinarily enjoys state sovereign immunity when he acts in his official capacity.

Lin insists that he can still seek equitable relief against Judge Shim in his official capacity under Ex parte Young, 209 U.S. 123 (1908), "to halt the ongoing constitutional violations for which Shim bears responsibility." SAC ¶ 16. Under the Supreme Court's decision in Ex parte Young, a "plaintiff may avoid the Eleventh Amendment bar to suit and proceed against individual state officers, as opposed to the state, in their official capacities, provided that his complaint (a) alleges an ongoing violation of federal law and (b) seeks relief properly

17

characterized as prospective." In re Deposit Ins. Agency, 482 F.3d 612, 618 (2d Cir. 2007).

Many of Lin's requests for injunctive and declaratory relief, however, are retrospective and target past conduct. See, e.g., SAC at 98 (seeking injunction "[v]acating" Judge Shim's December 6, 2022, December 17, 2024, and December 18, 2024 orders); id. (seeking judgment declaring that the defendants' "conduct as alleged violated [Lin's] rights under the U.S. Constitution" and that the "State court orders obtained by fraud and without due process ... are null and void and of no effect"). The injunctive relief that Lin seeks, though occasionally "phrased as a bar on 'continuing' conduct, is ... not prospective." Gribbin v. N.Y. State Unified Court Sys., No. 18-cv-6100, 2020 WL 1536324, at *6 (E.D.N.Y. Mar. 31, 2020). Identifying "the consequences of [a] past alleged violation ... is not the same as alleging an ongoing constitutional violation." Id.; see also Nat'l R.R. Passenger Corp. v. McDonald, 978 F. Supp. 2d 215, 231-32 (S.D.N.Y. 2013) (rejecting this argument because it "would obliterate the bar on retrospective relief created by the Ex parte Young doctrine and render a state liable for past violations of federal law, which is constitutionally impossible"), aff'd, 779 F.3d 97 (2d Cir. 2015).

To the extent Lin seeks retrospective relief from Judge Shim in his official capacity, Lin's claims are barred by the Eleventh Amendment.

**B.**

All of Lin's claims must be dismissed for the jurisdictional and prudential reasons outlined above. Yet Lin's claims would still fail in any event because he has failed adequately to plead facts showing a plausible entitlement to relief. First, Lin fails to state any claims against Judge Shim in his personal capacity because Judge Shim is entitled to absolute judicial immunity. Second, Lin's civil RICO, RICO-conspiracy, and § 1985(3) claims against all the defendants fail because Lin's allegations in support of those claims are wholly conclusory. Finally, Lin's § 1983 claims against Hou, Rivera, Lehman, Rodriguez, Offit Kurman, P.A., Phillips Nizer LLP, Riordan, Pizarro, Dr. Areizaga, and Manhattan Psychology Group, P.C. fail because Lin has not alleged adequately that any of these defendants are state actors. Lin's § 1983 claims against ACS, Thomas, and Henderson fail because the allegations supporting those claims are wholly conclusory.

**1.**

"It is well settled that judges generally have absolute immunity from suits for money damages for their judicial actions." Bliven v. Hunt, 579 F.3d 204, 209 (2d Cir. 2009). Judicial

19

immunity is intended to ensure "that a judicial officer, in exercising the authority vested in him, shall be free to act upon his own convictions, without apprehension of personal consequences to himself." Bradley v. Fisher, 80 U.S. (13 Wall.) 335, 347 (1871). "A judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority ...." Stump v. Sparkman, 435 U.S. 349, 356 (1978). Separately, § 1983 provides that "in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable." 42 U.S.C. § 1983.

Judges are not absolutely immune, however, "from liability for nonjudicial actions, i.e., actions not taken in the judge's judicial capacity." Mireles v. Waco, 502 U.S. 9, 11 (1991). "[T]he factors determining whether an act by a judge is a 'judicial' one relate to the nature of the act itself, i.e., whether it is a function normally performed by a judge, and to the expectations of the parties." Stump, 435 U.S. at 362.

Lin argues that the Judge Shim was not acting in his judicial capacity when he engaged in the conduct Lin challenges — for example, by allegedly issuing orders without notice, "facilitating threats of contempt and license revocation," and engaging in ex parte communications with other parties. SAC ¶ 16. As

20

an initial matter, the fact that a proceeding is "informal and ex parte ... has not been thought to imply that an act otherwise within a judge's lawful jurisdiction was deprived of its judicial character." Forrester v. White, 484 U.S. 219, 227 (1988). Judge Shim would be entitled to absolute immunity even assuming he exceeded his authority in issuing any of the orders Lin challenges. The ultimate question is whether Judge Shim's issuing of those orders was a "function normally performed by a judge." Stump, 435 U.S. at 362. Plainly, issuing orders in a custody dispute is a function normally performed by a family-court judge. See, e.g., Leathersich v. Cohen, No. 18-cv-6363, 2018 WL 3537073, at *2 (W.D.N.Y. July 23, 2018) ("[The judge's] actions in conducting hearings and deciding custody issues are all quintessential judicial functions that, even where performed incompetently or for improper purposes, cannot form the basis of a suit against the judicial officer."). Lin's "conclusory assertion that" Judge Shim was "part of an extrajudicial conspiracy in [his] family court proceedings does not change the judicial nature of" Judge Shim's actions. Hunter v. McMahon, 751 F. Supp. 3d 246, 253 (W.D.N.Y. 2024).

To the extent Lin seeks money damages from Judge Shim, those claims are barred by judicial immunity. To the extent Lin seeks injunctive or declaratory relief against Judge Shim in his personal capacity, "such relief is not available under § 1983

21

absent an allegation of a violation of a prior declaratory decree." Jacobs v. Mostow, 271 F. App'x 85, 88 (2d Cir. 2008). All of Lin's claims against Judge Shim in his personal capacity are therefore dismissed.

### 2.

To state a substantive civil RICO claim, a plaintiff must show, among other things, a violation of § 1962. See 18 U.S.C. § 1964(c); see also Kim v. Kimm, 884 F.3d 98, 103 (2d Cir. 2018). A § 1962 violation requires "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." Kim, 884 F.3d at 103. To establish a RICO conspiracy under § 1962(d), a plaintiff must "allege the existence of an agreement to violate RICO's substantive provisions." Butcher v. Wendt, 975 F.3d 236, 241 (2d Cir. 2020).

Lin fails adequately to plead a substantive civil RICO claim at the threshold because he has not sufficiently alleged the existence of an enterprise. An "enterprise" is "a group of persons associated together for a common purpose of engaging in a course of conduct," and with "associates [that] function as a continuing unit." DeFalco v. Bernas, 244 F.3d 286, 307 (2d Cir. 2001). In this case, Lin makes only conclusory allegations that any of the defendants were acting in concert with each other. See Oliphant-Macher v. Macher, No. 23-cv-1450, 2024 WL 4335728, at *6 (D. Conn. Sept. 27, 2024) (dismissing RICO claims because

22

"there is no factual basis in the SAC upon which to infer that plaintiff's estranged husband, a state court judge, and a municipal agency were acting in concert to plaintiff's detriment").

Similarly, Lin's RICO conspiracy claim fails because he does not allege any agreement between any of the defendants to violate RICO. "Conclusory allegations of agreements to violate RICO are insufficient to state a RICO conspiracy claim." Espire Ads LLC v. TAPP Influencers Corp., 655 F. Supp. 3d 223, 257 (S.D.N.Y. 2023). Lin makes only conclusory allegations that any of the defendants agreed to anything. See, e.g., SAC ¶¶ 67, 68. These allegations are insufficient to state a RICO conspiracy claim.

Lin's conspiracy claims under § 1985(3) fare no better. To state a claim under § 1985(3), a plaintiff must allege "(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of the equal privileges and immunities under the law; (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right of privilege of a citizen of the United States." Cine SK8, Inc. v. Town of Henrietta, 507 F.3d 778, 791 (2d Cir. 2007). There must be "some factual basis supporting a meeting of the minds, such that defendants entered into an agreement, express or tacit, to achieve the unlawful end." Webb

23

v. Goord, 340 F.3d 105, 110 (2d Cir. 2003). The conspiracy must also be "motivated by some racial or perhaps other class-based, invidious discriminatory animus." Cine SK8, 507 F.3d at 791.

As with his RICO conspiracy claim, Lin fails to plead facts showing any meeting of the minds between any of the defendants to engage in the allegedly unlawful conduct. Moreover, Lin does not plead facts tending to show that the alleged conspiracy was motivated by some impermissible class-based animus. He claims that the defendants "intentionally discriminated against [him] on the basis of his gender," SAC ¶ 100, but he makes no factual allegations to support that contention. Lin also claims in his opposition brief that the defendants' conspiracy was "driven by class-based animus against [him] as both a father and a whistle-blower — two groups recognized as systemically disfavored under § 1985(3)." Opp'n Mem. 32. The cases he cites in support of that proposition, however, either do not involve claims under § 1985(3) or do not involve fathers and whistleblowers. See Le-Blanc-Sternberg v. Fletcher, 67 F.3d 412 (2d Cir. 1995) (plain-tiffs established § 1985(3) claim based on religious discrimina-tion); Phillips v. Cnty. of Orange, 894 F. Supp. 2d 345 (S.D.N.Y. 2012) (discussing § 1983 claims that did not involve allegations of discrimination).

24

Because Lin has failed to plead facts showing he is entitled to relief on his RICO and § 1985(3) claims, those claimed are dismissed.

**3.**

Lin also alleges that the defendants violated his rights under the First and Fourteenth Amendments, and he seeks redress under § 1983. To state a claim under § 1983, a plaintiff must allege both that (1) a right secured by the Constitution or laws of the United States was violated, and (2) that right was violated by a person acting under color of state law. West v. Atkins, 487 U.S. 42, 48 (1988). Private actors are liable under § 1983 only if there is a "sufficiently close nexus" between the state and the private action, and thus the action may be "fairly treated" as state action. Sykes v. Bank of Am., 723 F.3d 399, 406 (2d Cir. 2013).

Hou, Rivera, Lehman and Rodriguez (Hou's lawyers), Offit Kurman, P.A. and Phillips Nizer LLP (those lawyers' current and prior firms), Dr. Areizaga (the child's therapist), and Manhattan Psychology Group (Dr. Areizaga's employer) are not state actors, and Lin makes no effort to argue otherwise. Riordan, the child's court-appointed lawyer, is also not a state actor, because "it is well-established that court-appointed attorneys performing a lawyer's traditional functions as counsel ... do not act 'under color of state law' and therefore are not subject

to suit under 42 U.S.C. § 1983." Rodriguez v. Weprin, 116 F.3d 62, 65-66 (2d Cir. 1997). Likewise, Pizarro, the court-appointed forensic investigator, is not a state actor because "[s]imply providing the Family Court with allegedly defective reports does not support allegations that [a clinician] should be treated as [a] state actor[]." Davis v. Whillheim, No. 17-cv-5793, 2019 WL 935214, at *10 (S.D.N.Y. Feb. 26, 2019); see also Cherner v. Westchester Jewish Comm. Servs., Inc., No. 20-cv-8331, 2022 WL 596074, at *4 (S.D.N.Y. Feb. 28, 2022) ("[A] court-appointed psychologist tasked with performing [a] forensic evaluation of Plaintiff and his family ... is not a state actor ....").

Lin also brings § 1983 claims against ACS, Thomas, and Henderson. As an initial matter, ACS is not a suable entity. See N.Y. City Charter, Ch. 17 § 396 ("All actions and proceedings for the recovery of penalties for the violation of any law shall be brought in the name of the city of New York and not in that of any agency, except where otherwise provided by law."); Graham v. City of New York, 869 F. Supp. 2d 337, 348 (E.D.N.Y. 2012) ("ACS is an agency of the City of New York and cannot be sued independently."). The claim against ACS must be dismissed for that reason alone.[2]

---

[2] The City of New York would be a suable defendant, but Lin would be required to prove that there was a municipal policy or custom that directly subjected him to a constitutional violation. See Monell v. Dep't of Soc. Servs. of City of N.Y., 436 U.S. 658 (1978); see

Lin's § 1983 claims against Henderson and Thomas fail as well. Lin repeatedly alleges that Henderson and Thomas issued "baseless" findings and "perform[ed] their investigations in a manner that furthered" the alleged conspiracy's objective of removing Lin's daughter from his custody. SAC ¶¶ 61, 63, 77, 107. But these allegations are conclusory — besides expressing disagreement with the conclusion of the caseworkers' investigations and insisting that they were acting in concert with Hou, Lin never explains how exactly their investigations were biased or their findings baseless.

The closest Lin comes in his § 1983 claim against the caseworkers is his procedural due-process argument. Lin contends that, at a minimum, the caseworkers violated his due-process rights by issuing an "indicated" finding without first conducting a hearing. SAC ¶ 77.

As an initial matter, Lin alleges elsewhere in his complaint that he had an opportunity to be heard by the caseworkers — specifically, he alleged that Henderson interviewed him and that he sent Henderson "substantial evidence of Hou's wrongful conduct." SAC ¶ 45. But in any event, Lin never shows that

---

also Amnesty Am. V. Town of West Hartford, 361 F.3d 113, 125 (2d Cir. 2004) ("[C]onstitutional torts committed by city employees without official sanction or authority do not typically implicate the municipality in the deprivation of constitutional rights, and therefore the employer-employee relationship is in itself insufficient to establish the necessary causation.").

he is entitled to a hearing before a caseworker can make a finding. Lin cites Southerland v. City of New York, 680 F.3d 127 (2d Cir. 2012), for the proposition that due process entitles a parent to a hearing before the state can restrict that parent's custody over the parent's child. But in Southerland, the caseworker obtained an ex parte order from the Family Court authorizing entry into the parents' apartment to remove the plaintiffs' children. In this case, and unlike in Southerland, Henderson and Thomas made findings that they then reported during an ongoing custodial dispute before the Family Court. Henderson and Thomas did not use their findings to engage in an ex parte removal of Lin's child. Southerland, 680 F.3d at 140. Moreover, Lin had an opportunity to be heard before the Family Court on those findings before Judge Shim issued the January 2022 order limiting Lin's custody.

For the reasons explained above, Lin's § 1983 claims are dismissed.

## C.

The defendants also argue that if the Court dismisses Lin's federal-law claims, it should decline to exercise supplemental jurisdiction over Lin's residual state-law claims. The Court need not reach this argument because, as explained in section III.A, the Court either lacks jurisdiction or abstains from exercising jurisdiction over any of Lin's claims. But, for the

sake of completeness, the Court also declines to exercise supplemental jurisdiction over Lin's state-law claims.

Because Lin's federal claims have been dismissed, the Court can hear his state-law claims only if it exercises supplemental jurisdiction. 28 U.S.C. § 1367(c)(3); see also United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726 (1966). In deciding whether to exercise supplemental jurisdiction, a federal district court balances the traditional "values of judicial economy, convenience, fairness, and comity." Kolari v. New York-Presbyterian Hosp., 455 F.3d 118, 122 (2d Cir. 2006). "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors ... will point toward declining to exercise jurisdiction over the remaining state-law claims." Id. Because district courts ordinarily will not maintain jurisdiction over state-law claims once the anchoring federal claims are dismissed, the Court declines to exercise supplemental jurisdiction over Lin's remaining state law claims. See 28 U.S.C. § 1367(c)(3).

**IV.**

The Court has considered all the arguments raised by the parties. If any argument was not specifically addressed, it is

29

either moot or without merit. For the foregoing reasons, the defendants' motions to dismiss are **granted**.

The Clerk is directed to close all open docket entries. The Clerk is also directed to enter judgment dismissing this action without prejudice for lack of subject-matter jurisdiction.

**SO ORDERED.**
**Dated:**     **New York, New York**
              **March 6, 2026**

                                    _____
                                         John G. Koeltl
                                    United States District Judge